UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CLARENCE JEFFERSON,**

    **Plaintiff,**

v.                                                    Case No. 8:05-cv-809-T-30MSS

**CASUAL RESTAURANT CONCEPTS,
INC.,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 25) and Plaintiff's Response in Opposition to the same (Dkt. 28). Defendant moves for summary judgment on Plaintiff's racial harassment, racial discrimination and retaliation claims. For the foregoing reasons, this Court finds that Defendant's motion is **denied**:

### I. FACTUAL BACKGROUND

Plaintiff, an African American, was employed as a cook for Casual Restaurant Concept's Inc or Applebee's[1] between March 2004 and January 2005. During his employment, Plaintiff received praise from his managers as being a good employee with a good work ethic. According to Plaintiff, at some point in October 2004 until the end of his employment, he was subjected to racial harassment by his supervisors and his co-workers.

---

[1] Casual Restaurant Concepts, Inc is a franchisee of Applebee's Restaurant. For ease of reference, Defendant will be referred to herein as Applebee's.

Specifically, Plaintiff alleges that between October 2004 and his termination in January 2005, the following incidents occurred:

- General Manager Mike Bell called Plaintiff a "lazy fucking nigger;"[2]

- Assistant Manager Todd Mink slapped Plaintiff on the behind with a towel and stated "I just hung me a nigger;"

- When Plaintiff attempted to shake the hand of Area Manager Victor Marinello, Marinello stepped back and indicated he didn't want to shake Plaintiff's hand, but turned around and shook the hand of a white employee;

- A white employee, Dan Ellis told Plaintiff, "I cut off my hair just for you, white supreme power, KKK;"

- Another white employee, Stacy (last name unknown) called Plaintiff "boy" approximately 12 times;

- Angel Lugo, an employee, referred to Plaintiff as nigger about 300 times;

- Co-worker Gavin Gorrigan made jokes about black people, told Plaintiff how he and his brother beat a black man when they were in school, and asked Plaintiff to play paint ball with him so Gavin could "show . . . how they gunned down the 'N';" and

- Bell grabbing Plaintiff's arm on Plaintiff's last day of work and called Plaintiff a "stupid motherfucker."

Defendant has an anti-harassment policy which details the complaint procedure to be used in the event of harassment. The policy reads in part:

> Casual Restaurant Concepts disapproves of harassment of any employee (whether it is by a fellow employee, a manager, a guest or a vendor) on the basis of gender, race, religious beliefs, national origin, age, disability, or sexual orientation. Any verbal or physical behavior such as sexual advances, requests for sexual favors, sexual, racial, religious or ethnic jokes or slurs and

---

[2] Bell admits in his deposition that he referred to Plaintiff as a lazy fucking nigger in fun (Dkt. 25, Ex. 18 at 6-7). Bell stated he was never reprimanded for his actions, but instead was "talked to." Id. at 9.

>any other type of behavior, which harasses, disrupts or interferes with another's work performance or which creates an intimidating, offensive or hostile environment will not be tolerated . . . Any type of harassment is grounds for immediate disciplinary action, up to and including termination and when applicable, legal prosecution.

(Dkt. 25, Ex. 6 at 3).

The policy also details how harassment should be reported:

>Any alleged incidents of harassment, sexual or otherwise, must be immediately reported to your General Manager or your District Manager and the Vice President of Operations. You will also need to submit a detailed written statement describing the situation which includes times and dates (if possible) and the names of any potential witnesses to the harassment.

Id. at 4.

Following the initial racial epithet by Bell, Plaintiff contacted Marinello the next morning to report the incident. Marinello informed Plaintiff that he would come to the restaurant to investigate Plaintiff's complaints. A few weeks later, Marinello and Vice President of Operations, Craig Baird, met with Plaintiff, Bell and Kitchen Manager Ray Karnes.[3] After the meeting, Bell apologized for making the racial slur. At no time was he ever reprimanded for his actions.

After the incident with Mink, Plaintiff again contacted Marinello to complain. While Marinello assured Plaintiff the situation would be handled, no formal reprimand against Mink was issued.

---

[3] There appears to be some confusion between the parties as to who was in attendance at this meeting. Plaintiff's recollection is he, Bell, Marinello, Baird and Karnes were present. However, in Marinello's notes, he indicates that only Bell and Plaintiff were present. The other individuals, according to Marinello, were present at another meeting discussing Plaintiff's problems with Karnes. (Dkt, 25, Ex. 13 at 3).

Plaintiff also voiced complaints regarding his co-workers use of racial slurs and/or other racially based comments. While some of the comments stopped, others did not. For example, even after complaining about Dan and Angel's use of harassing language, Plaintiff contends the harassment did not stop. When asked why he did not continue to complain, Plaintiff indicated that supervisors were hearing the comments, but did nothing about it in light of his complaints.

On January 17, 2005, Plaintiff was terminated from his job. On that evening, the shift on which Plaintiff was working was busy and orders were delayed. During the kitchen's efforts to get caught up, Bell entered the kitchen and grabbed Plaintiff's arm, calling him a "stupid motherfucker." Plaintiff immediately informed Mink of the incident and subsequently left the restaurant.[4] Upon leaving the restaurant, Plaintiff contacted Marinello and informed him that he was being harassed by management. After receiving Plaintiff's call, Marinello contacted the restaurant and spoke to Mink and Darryl Weber. Marinello, however, does not remember what information he received from Plaintiff regarding the harassment. After the incident between Plaintiff and Bell, Plaintiff also contacted Baird and informed him of the situation. Baird advised Plaintiff that he would call the restaurant to investigate. Later that evening, Marinello called Plaintiff and informed him that he was terminated. Subsequently, Plaintiff filed the instant suit.

---

[4] There is some disagreement between the parties whether at the time of Plaintiff's departure, he had permission from his manager to leave.

## II. DISCUSSION

**A.      Summary Judgment Standard.**

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this rather exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In applying this framework, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir.1998); Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997).

Equally clear, however, is the principle that the nonmoving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his or her favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir.1990). The nonmoving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ⋯ must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir.1998) ("Summary judgment may be granted if the evidence is 'merely colorable.'") (quoting Anderson, 477 U.S. at 248, 106 S.Ct.

2505). Further, and significantly, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. See Earley, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. See Celotex, 477 U.S. at 322.

**B.    Racial Harassment claims.**

Plaintiff alleges he was subjected to a hostile work environment based on his race due to the racial epithets of his managers and co-workers as discussed, *supra*. To make out a prima facie case of hostile work environment racial harassment under Title VII and § 1981, Plaintiff must show (1) that he belongs to a protected group, (2) that he was subjected to unwelcome racial harassment, (3) that the harassment was based on his race, (4) that the harassment " 'was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment,' " and (5) a basis for holding Defendant liable. Watson v. Blue Circle, Inc., 324 F.3d 1252, 1257 (11th Cir.2003) (citations omitted).  To determine whether harassment objectively alters an employee's terms or conditions of employment, the following four factors are considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza v. Borden,

Inc., 195 F.3d 1238, 1246 (11th Cir.1999) (en banc).  "Proof of each factor is not required in order to justify a finding that the objectionable conduct is severe and pervasive enough to violate Title VII; rather, the Court must consider the totality of the circumstances." Id. at 6 (citations omitted).  Defendant argues that Plaintiff has failed to establish a prima facie case of racial harassment because he has not produced any evidence that the alleged harassment was sufficiently severe or pervasive.  Specifically, that Plaintiff has presented no evidence that the alleged harassment unreasonably interfered with his job performance.  Plaintiff argues that the racial slurs and comments taken in total, evidence a racially abusive working environment sufficient to survive summary judgment.  This Court agrees.

When examining whether alleged harassment objectively alters an employee's terms and conditions of employment, a court can also consider whether racial slurs by co-workers are so " 'commonplace, overt and denigrating that they create[ ] an atmosphere charged with racial hostility.' " Edwards v. Wallace Cmty. College, 49 F.3d 1517, 1521 (11th Cir.1995) (quoting *E.E.O.C. v. Beverage Canners, Inc.,* 897 F.2d 1067, 1068 (11th Cir.1990)). See also Hewlett v. Waffle House, Inc., 2006 WL 1582423 at 3, fn 12 (M.D. Ga. 2006).  In reviewing the record, it appears to this Court that a jury could find that Plaintiff's working environment was one where management condoned the utterance of racial epithets, i.e, the failure of upper management to formally reprimand General Manager Bell for admittedly referring to Plaintiff as a "lazy nigger;" and Area Manager Marinello's comments during his deposition that a general manager's reference to an employee as a "lazy nigger" possibly would be a violation of company policy:

> Q: Is it possible that a general manager can call an employee a lazy nigger and it would not be a violation of the company's policies?
>
> A: It is possible.
>
> Q: Okay. Tell me the circumstances when a general manager can refer to one of his black subordinates as a lazy nigger and that would not be a violation of the company's harassment policy.
>
> A: If it was a - - just a slip of the tongue.

(Dkt. 25, Ex. 11 at 14 -15). Moreover, based on these comments and the others referenced above, a jury could find that the utterance of racial slurs by management to and about African Americans without repercussion, and the comments of Plaintiff's co-workers, created an abusive working environment for African American employees. See E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)(holding that racial slurs made by management and co-workers were frequent and not part of casual conversation and therefore were commonplace, overt and denigrating). Accordingly, this Court finds that Plaintiff has sufficiently established a prima facie case of racial harassment.

Once Plaintiff has established a prima facie case of harassment, an employer can raise an affirmative defense to liability or damages. This defense, the Faragher/Ellerth defense[5], is comprised of two elements which the employer must prove. First, that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and

---

[5] This defense is not available if the supervisor's harassment culminates in a tangible employment action. See Hansen, 206 F.Supp.2d at 1235. As no tangible employment action has been alleged as a result of the harassment, the affirmative defense is available.

second that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. See Hasen v. Perry Technologies, 206 F.Supp.2d 1223, 1235 (citing Burlington Industries v. Ellerth, 524 U.S. 742, 762 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998)). Defendant argues that it is entitled to the Faragher/Ellerth affirmative defense because Defendant had in place an anti-harassment and discrimination policy that was distributed to all employees, including Plaintiff and Plaintiff unreasonably failed to follow the reporting procedures by failing to submit a written report as required under the harassment policy. Plaintiff argues that Defendant should not be entitled to the affirmative defense because Plaintiff availed himself of the reporting procedures when he reported to management each of the racial comments being made by co-workers and managers. Plaintiff also argues that Defendant did not exercise reasonable care to prevent and correct the behavior because in spite of the complaints, no discipline was issued and Plaintiff continued to be the subject of racial comments.

In reviewing the record, this Court determines that Defendant is not entitled to summary judgment based on the Faragher/Ellerth affirmative defense. While Defendant has, in this Court's estimation, established the first prong of the affirmative defense,[6] there is some dispute about whether Plaintiff, despite his verbal complaints to management about

---

[6] Plaintiff admits that after complaining about Bell, no further comments were made. While Plaintiff does testify that Angel continued to make comments, Plaintiff has presented no evidence that he informed management about these comments and Marinello testified he had no knowledge of any other comments being made.

some comments, reasonably took advantage of Defendant's complaint procedure. Defendant states Plaintiff did not take advantage of the complaint procedure because while he did complain verbally to upper management, he failed to issue a formal written complaint. Plaintiff argues that he did reasonably avail himself of the complaint procedure evidenced by Defendant's recognition of the verbal complaints. Whether Plaintiff's verbal complaint was reasonable and sufficient to put Defendant on notice of the alleged harassment is a question of fact to be determined by the jury. See Frederick v. Sprint/United Management Co., 246 F.3d 1305, 1316 (11th Cir. 2001) (citing Brenda v. Wolf Camera & Video, 222 F.3d 886 (11th Cir. 2000)). Accordingly, summary judgment as to Count I of Plaintiff's Complaint is **denied**.

**C.     Race Discrimination Claim.**

A plaintiff must establish a prima facie case using direct evidence of discrimination or by relying on circumstantial evidence to prove discriminatory intent. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir.2004). To establish a prima facie case using direct evidence, a plaintiff must present "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption; in other words, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate. . . constitute direct evidence." Id. This is not a direct evidence case, thus plaintiff must establish a prima facie case pursuant to McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), using circumstantial evidence.

In McDonnell-Douglas, the Supreme Court set forth the applicable legal framework for assessing circumstantial evidence discrimination claims. Plaintiff is required to establish a prima facie case of discrimination by showing that: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified for the job. McDonnell-Douglas Corp., 411 U.S. at 802; Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield, 115 F.3d at 1562. If plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the employment action, which is clear, reasonably specific and worthy of credence. Hall v. Alabama Ass'n of Sch. Bds., 326 F.3d 1157, 1166 (11th Cir.2003). At this stage, the defendant has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. Id. (citing McDonnell-Douglas, 411 U.S. at 802). The Eleventh Circuit has described this burden on the defendant as "exceedingly light." Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir.1994) (citations omitted).

Once the employer satisfies its burden, the presumption against the defendant is rebutted, and plaintiff must show that the defendant's proffered reason is merely pretext for an illegal motive. See McDonnell-Douglas, 411 U.S. at 802-04; Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir.2002). At this phase, the plaintiff must "introduce significantly

probative evidence showing the asserted reason is merely pretext for discrimination." Sheppard v. Sears, Roebuck & Co., 391 F.Supp.2d 1168, 1180 (S.D.Fla.2005) (quoting Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir.1997)). The plaintiff cannot establish pretext merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer. Alexander v. Fulton Cty., 207 F.3d 1303, 1339 (11th Cir.2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir.1997)); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir.1999) (courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision").

A plaintiff may establish pretext in different ways. He may either directly persuade the Court that a discriminatory reason more likely than not motivated the employer or may demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Jackson v. State of Ala. State Tenure Com'n, 405 F.3d 1276, 1289 (11th Cir.2005). Further, one of the indirect ways to show pretext is by illustrating that there was a deviation from a policy in making an employment decision, especially when rules are bent or broken to give a non-minority applicant an advantage. Carter v. Three Springs Residential Treatment, 132 F.3d 635, 644 (11th Cir.1998). However, standing alone, a deviation from company policy does not establish discriminatory animus. Mitchell v. USBI Co., 186 F.3d 1352, 1355-56 (11th Cir.1999).

The parties dispute whether Plaintiff has establish a prima facie case, specifically, whether Plaintiff has presented evidence that he was treated differently than similarly situated non-African American employees. Defendant argues that Plaintiff has identified no other non-African American employee who reportedly had a "disruptive tantrum in the restaurant", used vulgarities and expletives, and who walked out of the restaurant who wasn't subsequently terminated. Plaintiff denies these events occurred, and argues that he was treated differently than other non-African American employees because no other non-African American employees were "forced to deal with the onslaught of racial epithets and harassing actions," or the alleged physical assaults. While the alleged physical assault is disputed, Plaintiff has presented evidence that Bell uttered a racial epithet and has presented testimony of several other comments having been made by co-workers. Defendant has presented no evidence to dispute these contentions. For purposes of summary judgment, this Court takes Plaintiff's version of events as true and finds that Plaintiff has established a prima facie case of race discrimination.

As stated above, once Plaintiff has established a prima facie case of discrimination, Defendant must articulate a legitimate business reason for its employment decision. In the instant case, Defendant states that Plaintiff was terminated for disrupting the restaurant with a temper tantrum, using expletives such as "fuck" in the presence of guests and walking out of the restaurant without permission. Plaintiff denies these events occurred and testified during his deposition that he asked Mink for and was granted permission to leave after Bell grabbed his arm and called him a "stupid motherfucker." In support of his pretext argument,

Plaintiff provides evidence that the decision maker (Marinello) failed to conduct an independent investigation as to what occurred on that evening, and instead relied on the accounts of two managers[7], one of which Plaintiff previously complained had slapped Plaintiff with a towel and stated, "I just hung me a nigger."[8]   There is a disputed issue of fact concerning the circumstances surrounding Plaintiff leaving the restaurant on that evening.  A jury will have to resolve these disputes.  Upon the present state of the record, this Court determines that Plaintiff has presented evidence of pretext and Defendant's motion for summary judgment as to Count II is **denied**.

**D.     Retaliation.**

Plaintiff also alleges that he was terminated in retaliation for complaining to management about the alleged racial harassment of Bell, Mink and his co-workers.  To establish a prima facie case of employment retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, (3) and there is some causal connection between the protected activity and the adverse employment action. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998).   The parties do not appear to dispute that Plaintiff can establish a prima facie case of retaliation.  What is in dispute is whether Defendant's reason for terminating Plaintiff is pretext for retaliation.   Similar to Plaintiff's race discrimination claim, Defendant's allege

---

[7] Marinello admitted in his deposition that he based his decision solely on the accounts of Mink and Weber.

[8] Mink denies making this statement to Plaintiff.

Plaintiff was terminated as a result of Plaintiff abandoning his job and being disruptive toward employees and verbally negligent toward guests.  Plaintiff contends that at the time he left the restaurant he had permission from his manager to leave the restaurant and left only after being given permission.  Moreover, Plaintiff flatly denies using any vulgarity prior to requesting permission to leave.  Consequently, there is an issue of fact as to Defendant's legitimate business reason for terminating Plaintiff.  Summary judgment as to Count III is **denied.**

### E.    Plaintiff's claim for punitive damages.

Plaintiff also alleges that he is entitled to punitive damages because Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.  Specifically, Marinello and Baird, two high level managers, had actual knowledge of the alleged discriminatory conduct, but acted with callous indifference by failing to issue discipline to those who uttered racial epithets and appearing to tolerate the alleged harassment.

In order for the issue of punitive damages to reach a jury, a plaintiff "must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to [the plaintiff's] federally protected rights." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1280 (11th Cir. 2002).  "'[P]unitive damages will ordinarily not be assessed against employers with only constructive knowledge' of harassment; rather, punitive damages may only be considered in cases where the 'discriminating employee was high[] up the corporate hierarchy' or where 'higher management countenanced or approved [his]

behavior.'" Id. (citing Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1323 (11th Cir. 1999). As this Court has previously held that a jury could determine that higher management condoned the allegedly racially insensitive and hostile environment existing at Applebee's, summary judgment as to Plaintiff's punitive damages claim is **denied**.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Dkt. 25) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on August 4, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-809 Motion for Summary Judgment - Racial harrasment and retaliation.frm